

# THE ATTORNEY GENERAL
# OF TEXAS

April 11, 1989

JIM MATTOX
ATTORNEY GENERAL

Honorable James M. Kuboviak
Brazos County Attorney
300 East 26th Street
Suite 325
Bryan, Texas 77803

Opinion No. JM-1039

Re: Distribution of tax funds remaining after dissolution of water control and improvement district, and related questions (RQ-1520)

Dear Mr. Kuboviak:

You have asked about the right of Brazos County to contract with a water control and improvement district to receive and use the surplus tax funds of the district remaining at the time of its dissolution if the county agrees to carry out certain of the district's functions after the dissolution. The water control and improvement district is located wholly within Brazos County.

You explain:

> Brazos County Water Control and Improvement District No. 1, Big Creek, (hereinafter "Big Creek") was validated for organization and creation by Act on June 27, 1959, Chapter 10, 1st C.S., § 1-12, 1959 Tex. Gen. Laws 30, and under the legislative duties conferred thereby at Tex. Const., Art. XVI, § 59. Several events now warrant dissolution of Big Creek. A federal district court order has enjoined Big Creek from completing any further construction of flood control improvements or of carrying out its statutory purposes until it has complied with the applicable provisions of the National Environmental Policy Act and the Environmental Quality Improvement Act by completing, in association with the Soil Conservation Service, a NEPA study of the water sheds within its boundaries. The district has found that the study and cost of the completion of improvements as necessitated by that study would be prohibitive. Prior to this

> date, Big Creek, because of continuous court proceedings and litigation, has failed to complete the flood control and drainage structures within the ten (10) year time period from its date of creation as set forth in § 51.793 of the Texas Water Code.
>
> The district must now contract with some government entity to maintain and repair the structures it has completed, it must contract to pay for such services and then it must dispose of its surplus tax funds upon its dissolution.
>
> . . . .
>
> It has been determined by Big Creek, that, even after contracting with the County, if the districts debts and obligations were satisfied upon its dissolution, including allowances for the maintenance of existing improvements until their retirement, a cash surplus would exist.

We are advised that the Big Creek district has existed for approximately 30 years; that it issued bonds many years ago; that the issued bonds and other obligations have been retired or else previously collected tax money is available to retire all outstanding district obligations and antici- pated expenses; and that approximately $30,000 will remain after such payments. It is also our understanding that the only "district functions" to be discharged following the dissolution of the district will be the maintenance of dams, for which Brazos County is willing to assume responsibili- ty.[1]

---

1. The opinion process of this office is designed to furnish legal opinions based upon a stated fact situation, and not to resolve fact disputes. A recitation of facts in an opinion is a not an affirmation of their accuracy, but merely a recital of the basis upon which the legal opinion is offered. See generally Rotello v. Brazos County Water Control & Improvement Dist. No. 1, 511 S.W.2d 392 (Tex. Civ. App. - Houston [1st Dist.], 1974, writ ref'd, n.r.e.) (historical background regarding the district).

Title 4 of the Texas Water Code governs districts, including the Big Creek District, created by the authority of article XVI, section 59, of the Texas Constitution. Water Code § 50.001(1). The provisions of the title generally applicable to all such districts are found in chapter 50 of the Water Code; those particularly concerning water control and improvement districts are contained in chapter 51 thereof.

Subchapter G of chapter 50 (applicable to all districts) deals generally with the dissolution of inactive districts. It provides that, after notice and hearing, the Texas Water Commission may dissolve any district which is inactive for a period of five consecutive years and has no outstanding bonded indebtedness. Water Code § 50.251. Upon the dissolution of a district by the commission, the assets of the district escheat to the state. Id. §50.257.

Water control and improvement districts may also be voluntarily dissolved pursuant to subchapter P of chapter 51 of the Code (dealing particularly with water control and improvement districts). Different methods of doing so are authorized by subchapter P for several statutorily described situations. Section 51.781 of the Code provides:

(a) If the electors of a district reject the proposal to issue construction bonds by a constitutional or statutory majority vote, the board must dissolve the district and liquidate the affairs of the district as provided in Sections 51.781-51.792 of this code.

(b) Subject to the provisions of Subchapter G of Chapter 50 of this code, if a district finds at any time before the authorization of construction bonds or the final lending of its credit in another form that the proposed undertaking for any reason is impracticable or apparently cannot be successfully and beneficially accomplished, the board may issue notice of a hearing on proposal to dissolve the district.

(c) Subject to the provisions of Subchapter G of Chapter 50 of this code, if 20 percent of the qualified voters of a district petition the board for a hearing on a proposal to dissolve the district and deposit with the board an amount estimated to cover the

actual cost of giving notice and holding the hearing, the board shall publish notice of the hearing within 10 days and shall hold the hearing within 40 days after the filing of the petition, as provided in Sections 51.782-51.785 of this code. If the finding is against the petition, the deposit shall be applied to pay the cost of giving notice and holding the hearing.

The mechanics of a dissolution effected pursuant to section 51.781 of the Water Code are controlled by sections 51.782 through 51.792. Section 51.791 speaks to the disposition of excess taxes and reads:

(a) If taxes have been collected by the dissolved district in excess of the amount required to liquidate the obligations of the district, the excess shall be paid ratably to the county treasurer or treasurers of the county or counties in which the district was located.

(b) The commissioners courts shall credit the money received from the dissolved district to the interest and sinking fund for any outstanding county bonds. If the county has no outstanding bonds, the money may be applied as the commissioners court lawfully directs.

However, the situation of the Big Creek district, as we understand it, does not meet strictly any of the three circumstances described in section 51.781 because bonds have not been rejected by voters, construction bonds *have* been authorized, and no voters have petitioned the board for a hearing on a proposal to dissolve the district or deposited funds to cover the costs of such a hearing.

Subchapter P also authorizes dissolution in another circumstance. Section 51.793 reads:

Subject to the provisions of Subchapter G of Chapter 50 of this code if a district has not within 10 years from the date of its creation commenced and completed the construction of a plant and improvements to carry out the purposes of its creation in accordance with the plans adopted by the district, the board may enter a resolution in

> its minutes to dissolve the district under the provisions of Sections 51.794-51.828 of this code. After compliance with these provisions, a vote of the electors of the district, and the payment of its valid, enforceable indebtedness, the district may be dissolved.

The mechanics of dissolution under section 51.793 provisions are much more elaborate, time consuming, and costly than are those required when dissolution is effected pursuant to section 51.781, but the Big Creek district apparently does meet the section 51.793 condition: it has not within 10 years from the date of its creation been able to carry out the purposes of its creation. The difficulty is that the subsequent sections governing the dissolution of districts under section 51.793 do not specify what is to become of excess taxes after the district is dissolved -- unlike the provision of section 51.791 applicable to section 51.781 dissolutions. Furthermore, the provisions governing dissolutions under section 51.793 appear to assume that outstanding obligations will remain unpaid and unprovided for, and that an election approving additional tax bonds ("dissolution bonds") will be necessary to effect a dissolution.[2]

---

2. It is after the issuance, sale or delivery of needed dissolution bonds that a dissolution under section 51.793 is deemed to have been effected. Section 51.828 states:

> (a) On the issuance and sale or delivery of the dissolution bonds and the appointment and qualification of the trustee, the secretary shall deposit all available existing records of the district in the office of the county clerk of the county or one of the counties in which the district is located.

> (b) The district immediately is considered dissolved for all purposes, except that the taxes levied against the taxable property may be enforced in the name of the district on behalf of the bondholders by the trustee or his successors. The surviving board may meet from time to time until the dissolution bonds are paid and discharged and may delegate its powers and give instructions to the trustee or his successors as the board sees fit and circumstances warrant. After
> (Footnote Continued)

There is a third avenue for dissolution or abolition of water control and improvement districts provided by subchapter P, but it is available only to districts located entirely in a county having a population of less than 11,000 according to the last preceding federal census. See Water Code § 51.829. Brazos County, according to the 1980 census, has a population of more than 90,000, so the third alternative procedure is not available to it. Cf. Aiken v. Franklin County Water Dist., 432 S.W.2d 520 (Tex. 1968) (eligibility). Of interest, nevertheless, in the sections describing its mechanism, is section 51.836, which reads:

> If a district has outstanding bonds or other indebtedness maturing beyond the current year in which the dissolution occurs, the commissioners court of the county in which the district is located shall levy and have assessed and collected, in the manner prescribed in the Property Tax Code sufficient taxes on all taxable property in the district to pay the principal of and interest on the bonds and other indebtedness when due.

Until 1929, there was no provision in Texas law for the dissolution of a water control and improvement district. In that year, the substance of section 51.781 and its related provisions was enacted, and also the alternative procedure available under section 51.829. See Acts 1929, 41st Leg., ch. 87, at 204; ch. 280, at 578. The source law for section 51.793 and the procedure it authorizes was enacted in 1943. See Acts 1943, 48th Leg., ch. 328, at 550. That act provided, inter alia:

> Sec. 18. This Act shall be cumulative of all other provisions of law providing for the dissolution of water control and improvement districts organized under the provisions of Sections 59-a of Article XVI of the Constitution of Texas, and shall be applicable only to such districts as may adopt the provisions hereof as provided . . . .

We are of the opinion that the intent of the 1943 act regarding a method for disposing of excess taxes is implied

---

(Footnote Continued)
the payment of all dissolution bonds, interest, and costs of collection, the board shall be dissolved.

by its proclamation that its provisions are cumulative of all other provisions of law providing for the dissolution of water control and improvement districts. While such a statutory provision does not consolidate laws in pari materia, it does indicate an intent that they be considered to be in harmonious co-existence and cooperation. State v. Laredo Ice Co., 73 S.W. 951, 952 (Tex. 1903). The substance of both the provision now found in section 51.791 that excess taxes be paid to the county treasurer and the provision of section 51.836 that authorizes the county to retire the obligations of a dissolved district were already part of the law providing for the dissolution of such districts at the time of the 1943 enactment.

Section 51.802 of the Water Code (one of the sections supplementing the section 51.793 authorization for dissolution) specifically allows the board of the district to "contract with trustees, engineers, attorneys, and others it considers necessary or desirable to properly liquidate and wind up the affairs of the district," and we believe it may contract with the county to accept and maintain the district facilities in exchange for the district's excess tax monies remaining after its dissolution. In doing so, it will be conforming to the policy of the Water Code as exemplified by section 51.791. See also Water Code § 52.501 (dissolution of underground water conservation districts); id. § 66.403 (dissolution of storm control districts). See generally Water Code §§ 58.781-58.836 (irrigation districts). Cf. Trimmer v. Carlton, 296 S.W. 1070 (Tex. 1927) (pari materia, same purpose).

Aside from whatever the statutory duty of the county may be upon the dissolution of a water district located within its boundaries, if, in the reasonable opinion of the county commissioners court, the proposed contract is supported by adequate consideration flowing to the county, we believe that Brazos County may legally contract with Brazos County Water Control and Improvement District No. 1 to continue and carry out district functions after the dissolution of the district and, as consideration therefor, to receive the surplus tax funds of the district upon dissolution of the district. Section 411.002 of the Local Government Code reads:

> (a) The commissioners court of a county may contract with a governmental unit, including a county, municipality, or other political subdivision, to jointly acquire a right-of-way or to jointly construct or maintain a canal, drain, levee, or other

improvement for the purpose of providing flood control or drainage as it relates to flood control or for the purpose of providing and maintaining necessary outlets.

(b)  The contract may contain any provisions that the governing bodies of the contracting entities consider necessary.

(c)  The contracting entities may provide by contract, on mutually agreeable terms, that they shall jointly maintain the project or that one of them shall maintain the project under its exclusive direction and control while the other entity contributes to the expense of maintenance.

See also V.T.C.S. art. 4413(32c) (Interlocal Cooperation Act); Willacy County Water Control and Improvement Dist. No. 1 v. Abendroth, 177 S.W.2d 936 (Tex. 1944)(classification of districts). Cf. Attorney General Opinion MW-257 (1980) (related duties of county).

### S U M M A R Y

Brazos County may contract with Brazos County Water Control Improvement District No. 1 to continue and carry out district functions after the dissolution of the district and to receive the surplus tax funds of the district upon dissolution of the district.

Very truly yours,

JIM MATTOX
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

p. 5393

RICK GILPIN
Chairman, Opinion Committee

Prepared by Bruce Youngblood
Assistant Attorney General